UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHRISTOPHER TEMPLIN, § | |
| *Plaintiff*, § | |
| § | |
| vs. § | CAUSE NO. 4:24-CV-242-O |
| § | |
| JENNIFER CALVERT, § | |
| *Defendant* § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

NOW COMES Plaintiff, PAUL ESTRADA, by and through his attorney, CJ Grisham of Law Offices of CJ Grisham, P.L.L.C., to file this response to Defendant's Motion to Dismiss on 12(b)(6) grounds:

### I.     First Arrest

1. Plaintiff does not dispute that the first arrest detailed in his initial Complaint falls outside of the Statute of Limitations. The statute of limitations for a 1983 claim is dictated by the personal injury law of the state where the cause of action arose. It is an affirmative defense that a statute of limitations bars a claim. Tex. R. Civ. P. 94. Accordingly, Defendants bear the burden of establishing as a matter of law that Plaintiff's claims are time-barred. See *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 835 (Tex. App.-Houston [1st Dist.] 2012, pet. denied). Normally, the plaintiff's April 9, 2021, arrest

would fall outside this two-year limit since the instant case was not filed until September 9, 2023.

However, contrary to Defendants' assertions, there is a continuing violation in the continuing enforcement of an unconstitutional "policy" that dictates where journalists may stand, regardless of time, place, or manner circumstances. Under the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the Plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). "The continuing violation doctrine is a federal common law doctrine governing accrual." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). It is "equitable in nature and extends the limitations period on otherwise time-barred claims." *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018) (quotations omitted). It "should be invoked 'sparingly,' only when the situation calls for it." *Id*. Courts "must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F. 3d 850, 867 (5th Cir. 1993)(citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S. Ct. 1885, 52 L. Ed. 2d 571 (1977)).

Here, the Plaintiff's subsequent arrest in September 2021 was part of an ongoing campaign of harassment by the Defendants on independent journalists. The September 2021 arrest was reasonably related to the April 2021 arrest, meaning the limitations

period was tolled. Since the civil case was filed less than two years after the September 2021 arrest, it was filed within the limitations period.

Therefore, the April 9, 2021, arrest should not be dismissed. The City of Belton individually prohibited Plaintiff Paul Estrada from exercising his fundamental First Amendment right to film police and peacefully protest the government through prior restraint, threatening letters, and multiple arrests and charges intended to intimidate the Plaintiff beginning in April and continuing through his September 2021 arrest. The implementation of the enforcement efforts is an impermissible and wholly untailored prior restraint that prevents Plaintiff from exercising the right to speak and criticize government that lies at the very heart of the First Amendment.

2. Plaintiff does not fail to assert a claim against Officers Menix and Adkins. Both officers were involved with Chief Ellis in the conspiracy to deprive Plaintiff of his constitutionally protected rights. Plaintiff clearly alleges that the warrant was facially invalid when his complaint detailed how Officer Adkins went outside his jurisdiction to obtain a warrant to continue the conspiracy to arrest Plaintiff that was initiated by Chief Ellis. While not specified in so many words, describing the warrant in terms of being a fundamental aspect of the ongoing conspiracy and retaliation against rights by Officers in the department certainly qualifies as facially invalid.

3. <u>The Magistrate Relied Upon False Information to Find Probable Cause</u>. Defendants ignore the fact that they were involved in a conspiracy to deprive Plaintiff of his constitutionally protected rights and were acting on the issuance of a warrant to claim

that probable cause existed and, therefore, Plaintiff's claims should be dismissed. This is circular logic.

Plaintiff alleges that the search warrant was issued based on an affidavit that contained false information. A Defendant can challenge the validity of a warrant if he makes a substantial showing that the affiant included false statements knowingly, intentionally, or with reckless disregard for the truth. Officer Adkins knew or should have known that Plaintiff was engaged in constitutionally protected activities. Officer Adkins knew that Plaintiff never physically inserted himself into the stop as alleged in the warrant.

Since the false statements were necessary to the finding of probable cause, and since the remaining content without those false statements is insufficient for probable cause, the warrant is void. Here, Plaintiff has made a showing that false information was included in the affidavit, and that information was critical to establishing probable cause. Magistrates are not clairvoyant or telepathic. They assume that information provided to them by law enforcement is based on accurate and true information. Here, Officer Adkins intentionally reframed the traffic stop to suit the conspiracy to deprive Plaintiff of his constitutionally protected. Officer Menix was aware of this conspiracy when she arrested Plaintiff.

Therefore, the arrest warrant was illegally issued because the magistrate relied on false information included in the affidavit by the affiant. The Defendant has met the burden under *Franks* by making an offer of proof that the affidavit contained false statements made knowingly, intentionally, or recklessly. *Franks v. Delaware*, 438 U.S.

154 (1978). Since the false information was essential for probable cause and the remaining content did not establish probable cause, the warrant was invalid. Defendants knew or should have known that the warrant was invalid because they were all coordinating their actions to arrest Plaintiff.

    4. <u>The Grand Jury Relied Upon False Information to Find Probable Cause</u>. State law controls whether a state indictment is insufficient to confer jurisdiction. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir.1994). "To impeach the warrant" based on false information, "[Plaintiff] must show that [the agent] either deliberately or recklessly misled the magistrate and that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." *United States v. Davis*, 226 F.3d 350, 351 (citing *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)). "The necessary falsehood can be perpetrated by omission as well as [*7] commission, but the omission must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *Id*.

    Here, the officers knew that Plaintiff did not commit the offense of "exploitation of the elderly" because they knew that the alleged "victim" was in a public place. The alleged "victim" approached Plaintiff while he was filming in a public place. Despite this fact, Officer Oliveros falsely wrote in his affidavit of probable cause that Plaintiff "invaded the personal space of Ms. Miller with [his] cameras to provoke fear, alarm, and anger." Both Plaintiff and "victim" went to the police department – the "victim" to file a complaint and Plaintiff to pick up records responsive to an open records request. Officer

Oliveros intentionally twisted the facts to meet the ongoing conspiracy to deprive Plaintiff of his right to film officers in the course of their official duties. Unfortunately, this issue is still being criminally litigated as of the filing of this response. As a result, this case has been stayed, but arguments must still be made in opposition to Defendants' Motion to Dismiss.

      6.   <u>Procedural Due Process Claim is Not Barred</u>. Defendants claim that because the letter was written in April 2021, it is time barred. What Defendants fail to mention is that the letter was not in force just in April. It was in force in May. It was in force in June. It was in force in July. It was in force in August. It was in force in September. And, it is in force today. As such, the suit is not time barred.

      7.   <u>Chief Ellis's Letter Is Per Se Proof of *Turner* Violations</u>. The Chief's letter is the beginning of the conspiracy to deprive Plaintiff of rights. Defendants hope that the Court believes their whimsical tales that a camera puts officers' safety at risk without recognizing the right associated with that camera. Indeed, the only risk to officer safety that a camera poses is to their narrative and careers as it exposes actions such as those at issue here. No longer can police misconduct go unchecked and that does steam bad officers who, for too long, have gotten away with running roughshod over the Constitution.

      Defendants would have the Court believe that merely recording police amounts to "inserting oneself in active police scenes" as if there is a serial killer behind every steering wheel and public intoxicant. The Motion to Dismiss quotes the fanciful musings of police irritated that their actions are being covered by concerned citizens. The letter

contains many Orwellian retellings of Plaintiff's actions during traffic stop, most of which are at best wild embellishments of reality.

Defendants inadvertently admit that the letter creates an unconstitutional, uniform policy that is in no way consistent with the law. "To ensure the safety of all involved, protect your right to record, AND allow officers to work unimpeded, I invite you to record from a safer location (i.e. sidewalk across a street or at a distance)." This is a static policy doesn't take into account "reasonable time, place, and manner restrictions." "First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner v. Driver*, 848 F. 3d 678, 688 (5th Cir. 2017).

On its face, this is violative of the law because every police action is different. The letter requires recording from a sidewalk across the street even if no sidewalk exists. It suggest that a police encounter with a lady trying to get a cat out of a tree is equivalent to a police encounter with an active shooter. No reasonable person would say that standing across the street from an active shooting engagement is "reasonable."

The "at a distance" policy "is so vaguely worded that enforcement officials are given overly broad discretion to apply the law in a discriminatory and arbitrary manner, thus encouraging erratic arrests and convictions." *Grayned v. Rockford*, 408 U.S. 104, 108 (1972). "[A] regulation must (1) be within the constitutional power of the government, (2) further an important or substantial governmental interest, (3) be unrelated to the suppression of free expression, and (4) be no greater than essential to the

furtherance of the governmental interest if the regulation incidentally restricts freedom of expression.  *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

Here, the policy fails nearly every part of the *O'Brien* test.  Estrada has a First Amendment-protected right to film the police.  The policy is "not be the least restrictive or intrusive means of serving the government interests" because it is overly broad.  *Turner,* 8648 F.3d at 690.  The policy is nothing but related to the expression of free speech because it takes the citizen's camera away from its source of information.  Estrada has a right to "hear…information to reach consensus [as] a precondition to enlightened self-government and a necessary means to protect it." *Id.* at 689.  Requiring a citizen to move to a position where he cannot see or hear what the police are doing does not "contribute to the public's ability to hold police accountable, ensure that police officers are not abusing their power, and make informed decisions about police policy." *Id.*

8. *Officer Safety.*  Defendants are fast and loose with the term "officer safety" in their motion, but fail to provide a single bit of evidence about how a camera in any way endangers officers, the cameraperson, or citizens.  Plaintiff agrees that officers should be able to carry out their duties as safely and unimpeded as possible, but the fact that "officers were unhappy they were being recorded during an arrest . . . does not make a lawful exercise of a First Amendment right a crime" and does not immediately rise to a threat or danger to law enforcement officers scared of their own shadows.  *Glik v. Cunniffe*, 655 F.3d 78, 80 (1st Cir. 2011) (The 5th Circuit stated in *Turner* that, "We agree with every circuit that has ruled on this question: Each has concluded that the First Amendment protects the right to record the police").

Defense says that certain words are not unconstitutionally vague: "adjacent," "near," "hearing distance," and "safe distance." The problem is that none of those words and phrases appear in the Chief's letter. Plaintiff doesn't disagree that "safe distance" would be impermissibly vague, but those aren't the words the Chief used. The letter said "at a distance." "At a distance" doesn't qualify whether that distance must be a "safe distance" as included in Defendant's use of *U.S. v. Johnson*, 2006 W.L. 435975*4 (W.D. N.C. 2006). Laws are vague when they "trap the innocent by not providing fair warning." *Grayned*, 408 U.S. at 108. In addition, in order to defeat an allegation of vagueness, a law must contain explicit standards as guidance for those who apply them, thereby preventing arbitrary and discriminatory enforcement. *Id*. The Chief's letter does no such thing.

Even in the *Munn* case used by Defendants, the case revolved around an ordinance that paired the term "annoy" with "reasonable," an objective standard. The Chief's "at a distance" doesn't even require a reasonable person standard. In fact, it requires no standard at all: five inches distance? Five miles? When does "over there" become "out yonder?" Or, if the likely Plaintiff in such a case as this is Hispanic, what's the difference between "alli" and "alla"? There is no qualifier like "safe" distance or "reasonable" distance. Officers are free to make up their own definitions and citizens are not given notice that their actions may lead to arrest if they are not "at a distance" as defined by each officer in a department with approximately 50 officers.

Estrada never impeded Defendants. While Defendants claim a bullet-pointed list in the Chief's letter as proof that Estrada was impeding officers, those facts are in dispute

9

PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO DISMISS

and completely countered by video evidence.  A court has not yet found that Estrada indeed committed the acts alleged in the Chief's letter.  As of this filing, those allegations are nothing more than hearsay and Estrada emphatically denies those claims.

Defendants want to have their cake and eat it too by moving for a stay in these proceedings while the criminal case is being prosecuted AND claiming facts in dispute as proven truths to support their dismissal attempt.  Estrada rejects and denies every single bullet-pointed element in the Chief's letter.

9. *Injury-in-fact*.  Defendants claim that Plaintiff has not pleaded a recognized "injury-in-fact" is laughable at best, and dishonest at worst.  Plaintiff was arrested for exercising his rights (understanding that there are disputed facts about specific actions being prosecuted).  Plaintiff did not physically interfere with or obstruct the officers, but Defendants arrested Plaintiff.  Defendants engaged in prior restraint by enforcing the Chief's letter that was both unconstitutionally vague and violative of *Turner*.  This is an injury-in-fact.  Officers knew that Plaintiff had violated no laws, but charged him anyway.  This is an injury-in-fact.

Defendants posit that "Plaintiff nowhere pleads how the restriction will actually affect his right to record the police," but Page 6 of Plaintiff's initial complaint clearly notes that two days after the letter came out, Plaintiff was arrested for "Interference with Duties of a Public Servant" and detained for three days.  The entire complaint is rife with how the restrictions have and will affect his right to record.  Plaintiff could have written a 100-page dissertation on the ways the letter interferes with his right to record police, but Plaintiff respects the court's time and empathizes with the staff that would have to read it.

A trial will bring out the many ways however, Plaintiff alleged prior restraint and that "the policy…is not narrowly tailored to serve any significant government interest." Complaint, Page 9, Paragraphs 32-36.

    10. *Qualified Immunity*

Defendants are not entitled to qualified. The question of the right to film police officers in the performance of their duties in a public place has already been litigated in this and other Circuits. It is a clearly established right that the Defendants knew or should have known about.

In order for Plaintiff to overcome a claim of qualified immunity, he must meet two prongs. *Aguirre v. City of San Antonio*, 995 F.3d 406 (5th Cir. 2021). These prongs are not difficult to overcome here. Plaintiff will show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

"Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U. S. 635, 640 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *al-Kidd*, 563 U. S. at 741. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U. S. at 341. See also *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255, 260 (2015)

(quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2014). The relevant inquiry is whether existing precedent placed the conclusion that the officer acted unreasonably in the circumstances "beyond debate." See *Mullenix*, 136 S. Ct. at 309 (emphasis added). To be "clearly established," a right must be one that is "sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Id*. at 308 (emphasis added). As the Fifth Circuit, citing Malley, has put it: "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

In the instant case, there was no probable cause to arrest. Plaintiff was engaged in protected activities and posed absolutely no danger to officers. Even the allegations of interference lack probable cause because they consist solely of speech. Again, Plaintiff rejects all allegations in the Chief's letter and those matters are currently be litigated. Defendants knew or had reason to believe that Plaintiff was filming in a public place and was approached by the elderly "victim" he's being accused of exploiting. As will come out in court, this charge is nothing more than retaliatory against Plaintiff as punishment for doing something the Defendants don't like. Not a single element will be proven in court showing that no probable cause existed for the arrest. Because the indictment is based on false information, it cannot stand.

*1st Prong: Defendants violated a statutory or constitutional right*. As explained, "the First Amendment protects the right to record the police." *Turner*, 848 F.3d at 690.

Therefore, Defendants violated a statutory or constitutional right. This right is self-evident.

*2nd Prong: The right was 'clearly established' at the time of the challenged conduct.* *Turner* was decided in 2017. The actions involving the instant cause occurred in 2021. Defendants arrested Plaintiff in retaliation for filming them in a public setting during the normal course of their duties. Since it was clearly established at the time of Plaintiff's arrest that the right to publicly film police was protected by the First Amendment, Plaintiff meets the second prong. *Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022).

11. *Municipal Liability.* Defendants Motion to Dismiss rightly states that the City "is entitled to the same defenses / reasons for dismissal that have been discussed in the foregoing paragraphs, except for qualified immunity." Because Plaintiff has shown that there are constitutional violations, the claims against the City should not be dismissed. *Bustos v. Martin Club, Inc.*, 599 F.3d 458, 467 (5 th Cir. 2010); *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001); *Cook v. Hopkins*, 795 Fed. Appx. 906, 918 (5 th Cir. 2019).

WHEREFORE, Plaintiff respectfully requests that Defendants motion to dismiss be denied, qualified immunity be denied, and the Court allow Plaintiff to prove his case before a jury at the appropriate time. In the alternative, Plaintiff 9requests that the Court defer its decision until after the criminal case against Plaintiff has resolved so that matters of fact have been resolved and this Court can make a better determination as to the legitimacy of either party's claims.

Respectfully Submitted,

LAW OFFICES OF CJ GRISHAM PLLC

_____
**CJ GRISHAM**
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726
**COUNSEL FOR PLAINTIFF**

**Certificate of Service**

This is to certify that a true and correct copy of the foregoing instrument has been delivered to all parties of record, in compliance with the Court's CM/ECF system and/or Rule 5 of the Federal Rules of Civil Procedure, and additionally to Defendants via Certified Mail on the 9th day of January 2024.

By: */s/ CJ Grisham*
CJ Grisham